UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-23662-ALTMAN

ZEFLON LLC,

     *Plaintiff,*

*v.*

WORLD REACH HEALTH, LLC,

     *Defendant.*

_____/

## ORDER

Back in early 2021, the coronavirus pandemic was surging across the globe. Corporations and government agencies were scrambling to acquire COVID-19 antigen tests. In January 2021, Zeflon LLC, our Plaintiff, agreed to ship antigen tests to customers of World Reach Health, LLC, our Defendant. But things seem to have gotten lost in the shuffle. From what we can make of the record, Zeflon at various times apparently undercharged, overcharged, or didn't charge World Reach for the tests it shipped to World Reach's customers. Each party now claims that the other owes it money. *See generally* Complaint [ECF No. 1]; Answer and Counterclaims [ECF No. 34]. Both parties have moved for summary judgment, *see* Def.'s MSJ [ECF No. 102]; Pl.'s MSJ [ECF No. 104], but they fundamentally dispute many of the material facts. Because choosing between the parties' competing factual narratives is the jury's task, not ours, we **DENY** the Defendant's Motion and **GRANT in part** and **DENY in part** the Plaintiff's Motion.

## THE FACTS[1]

Zeflon is a reseller of COVID-19 antigen tests, while World Reach is a distributor and retailer of healthcare products, including COVID-19 antigen tests. *See* Joint Statement of Undisputed Material Facts ("Undisputed SMF") [ECF No. 106] ¶¶ 2–3. In January 2021, Zeflon began selling antigen tests to World Reach. *Id.* ¶ 3. Zeflon sourced these tests from two different manufacturers: Genbody America and PHASE Scientific International, Ltd. *Id.* ¶ 4. We'll call tests from the former the "Genbody Tests," and tests from the latter "Indicaid Tests." Genbody Tests are sold in cases of 900, while Indicaid Tests are sold in cases of 450. *Id.* ¶¶ 5–6. World Reach ordered tests from Zeflon, usually by email, and provided shipping labels for Zeflon to use. *Id.* ¶¶ 8–9. Zeflon generally used World Reach's shipping labels—but when it didn't, it provided tracking numbers on its invoices to World Reach. *Id.* ¶ 12. Either way, Zeflon shipped the tests directly to World Reach's customers. *Id.* ¶ 10.

After approximately a year, this system began to break down. *See id.* ¶ 15. On January 12, 2022, World Reach ordered twelve cases of Genbody Tests for one of its customers, Any1Health. *Id.* ¶ 16. World Reach provided Zeflon with twelve pre-printed FedEx shipping labels to use for that order.

---

[1] "The facts are described in the light most favorable to the non-moving party." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes *only* and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016) (Proctor, J.); *see also Cox v. Adm'r US Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (cleaned up). In adjudicating cross-motions, then, we consider each motion separately and, of course, resolve all reasonable inferences against the movant. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).

*Id.* ¶ 18. Zeflon charged World Reach for the Any1Health order on Invoice No. 31256, and World Reach paid that invoice in full. *Id.* ¶ 19. But Jim Pesoli, a founder and principal of World Reach, claims that Any1Health never received the order. *See* Declaration of Jim Pesoli in Support of World Reach's MSJ ("Pesoli Decl.") [ECF No. 103-1] ¶ 34. Isaac Capland, Zeflon's shipping manager, claims that Zeflon *shipped* the Any1Health order, albeit with different FedEx labels than the ones World Reach had provided. *See* Declaration of Isaac Capland in Support Zeflon's MSJ ("Capland Decl.") [ECF No. 105-3] ¶¶ 14–16. According to Capland, Zeflon's FedEx labels indicate that the tests were placed "In Transit," which means that the goods were tendered to FedEx. *Id.* ¶ 19.

Another customer of World Reach's was the State of Kansas. As reflected on Invoice No. 31286, Zeflon shipped several cases of Genbody Tests to the State of Kansas. Undisputed SMF ¶¶ 33–36. But, in February 2022, fifteen of these cases were damaged. *Id.* ¶ 40. World Reach says that these fifteen cases were destroyed by a pallet jack "prior" to delivery. Def.'s Statement of Material Facts ("Def.'s SMF") [ECF No. 103] ¶ 53. Zeflon, by contrast, seems to believe that the damage was done by a pallet jack "upon" delivery, *see* Pl.'s Statement of Material Facts ("Pl.'s SMF") [ECF No. 105] ¶ 29, although on reply it says that there's no evidence that the cases were damaged at all, *see* Pl.'s Reply Statement of Material Facts [ECF No. 115] ¶ 91.

The State of Kansas wanted World Reach to take back the fifteen damaged cases. *See* Undisputed SMF ¶¶ 38–39. Although Zeflon didn't believe it was obligated to do so, Zeflon offered World Reach credit if World Reach agreed to send the damaged Genbody cases back to Zeflon. *Id.* ¶ 42. It's undisputed that World Reach sent back five boxes and that Zeflon credited World Reach for those boxes. *Id.* ¶¶ 43–44. But World Reach believes that it sent back two *additional* Genbody cases. *See* Def.'s Resp. to Pl.'s MSJ [ECF No. 107] at 9. Zeflon, for its part, contends that the two additional cases World Reach sent back were not, in fact, Genbody Tests, but rather Indicaid Tests. *See* Pl.'s MSJ at 15.

Zeflon thus didn't offer World Reach a credit for these alleged Indicaid Tests—nor did it credit World Reach for the eight Genbody test cases World Reach never returned. *See* Undisputed SMF ¶¶ 44–46.

Zeflon and World Reach also contracted for other shipments—though the specific details of these aren't relevant here. Suffice to say that, on Invoice Nos. 31256, 31286, and 31291, Zeflon charged World Reach $2,650,500 for a total of 493,200 Genbody Tests and $120,150 for 27,000 Indicaid Tests. *Id.* ¶ 29. Zeflon also applied a credit of $1,026,600 to Invoice No. 31286 because of World Reach's commitment to a future shipment of goods. *See* Pl.'s SMF ¶ 15 (stating this fact); *see also* Def.'s Statement of Material Facts [ECF No. 108] ¶ 15 ("Undisputed.") But World Reach paid only $850,000 of the remaining balance on Invoice No. 31286. Undisputed SMF ¶ 32. World Reach also says that it ordered only 471,600 Genbody Tests—not the 493,200 reflected on Invoice No. 31286. *See* Def.'s SMF ¶ 45. World Reach thus believes that Zeflon overcharged it $118,800 for 21,600 Genbody Tests it didn't order. *Ibid.*

Because of these disputes, the parties engaged in a pre-litigation reconciliation process. *See* Undisputed SMF ¶ 46. Zeflon performed an audit at World Reach's request. *Id.* ¶ 47. During this audit, Zeflon found various issues with its invoices. *First*, it realized that it only delivered 26,100 of the 27,000 Indicaid Tests that were charged on Invoice No. 31256. *Id.* ¶ 48. It subsequently issued Invoice No. 31319, which reflected a $4,005 credit for the 900 undelivered Indicaid Tests. *Id.* ¶ 49. According to Zeflon, however, it *also* delivered 2,200 Genbody Tests on World Reach's behalf (it's unclear to whom), which World Reach accepted but for which it wasn't billed. *See* Pl.'s SMF ¶ 40. Zeflon thus also included a charge of $10,780 for these tests on Invoice No. 31319. *See* Undisputed SMF ¶ 50.

Later on in the reconciliation process, Zeflon issued Credit Memo No. 31377, which reflected a credit of $24,750 for the five damaged Genbody cases from the State of Kansas order, which (again) World Reach had returned to Zeflon. *See* Pl.'s SMF ¶ 42. But Zeflon also discovered that it had inadvertently charged World Reach for an order of 5,000 tests (whether they were Genbody or

Indicaid Tests, we're not sure) it had shipped to another company, Sphere DX Laboratory. *Id.* ¶ 43. Zeflon therefore issued an additional $24,500 credit to World Reach, which is also reflected on Credit Memo No. 31377. *See* Undisputed SMF ¶ 52.

In a nutshell, then, Zeflon believes that it's still owed some money. Specifically, Zeflon contends that World Reach hasn't paid the $309,905 remaining on Invoice Nos. 31286 and 31310 for the State of Kansas order. *See* Pl.'s SMF ¶ 46. After accounting for the credits it gave World Reach in Credit Memo No. 31377, Zeflon believes it's still owed $260,655. *Id.* ¶ 47. As we'll see, however, World Reach disputes this, arguing that it hasn't received all the credits it's due and that it never ordered the total amount of Genbody Tests Zeflon claims it did.

### THE LAW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying

5

those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting FED. R. CIV. P. 56 advisory committee's note)). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington*, 261 F.3d at 1265.

In sum, then, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Child. & Fams.*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

### ANALYSIS

As we'll explain in greater detail below, we now grant in part and deny in part Zeflon's motion for summary judgment. Specifically, we deny, for the most part, Zeflon's request for summary judgment on its own breach-of-contract claim because there are still genuine disputes of material fact

that must be decided by a jury. We do, however, grant Zeflon's motion for summary judgment on World Reach's declaratory-judgment and unjust-enrichment claims—and we grant Zeflon's motion on World Reach's affirmative defenses of statute of frauds, estoppel, inability to recover consequential damages, misrepresentation, and set-off based on collateral sources (such as insurance payments). Lastly, we deny World Reach's motion for summary judgment.

## I.       Zeflon's Motion for Summary Judgment

Zeflon seeks summary judgment, arguing (1) that World Reach owes it $260,655 and (2) that World Reach's affirmative defenses and counterclaims fail as a matter of law. But there remain in this case a whole host of genuine disputes of material fact about the goods World Reach ordered, received, and paid for.

### a.    *Zeflon's Breach-of-Contract Claim*

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citations omitted). In a contract for the sale of goods, we apply the Florida Uniform Commercial Code. *Certain Underwriters at Lloyd's of London v. Scents Corp.*, 2024 WL 2956768, at *2 (Moreno, J.) (S.D. Fla. June 12, 2024). "Under the Florida UCC, courts may consider extrinsic evidence of course of performance, course of dealing, or usage of trade to explain or supplement a contract's terms, even when those terms are not ambiguous, as long as the evidence is not used to contradict the contract's terms." *Gulf Power Co. v. Coalsales II, LLC*, 522 F. App'x 699, 704 n.6 (11th Cir. 2013) (citing FLA. STAT. §§ 672.02, 670.202 cmt. 1(c), 672.208).

Zeflon seeks summary judgment on its own breach-of-contract claim, arguing that there's no dispute of material fact that World Reach owes it $260,655 on Invoice No. 31286 for unpaid-but-delivered Genbody Tests. *See* Pl.'s MSJ at 13. Zeflon first contends that its course of dealing with

World Reach was as follows: "World Reach ordered goods from Zeflon, which Zeflon shipped to World Reach's customers, per World Reach's specifications." *Id.* at 14. Zeflon would then "invoice[ ] World Reach for goods Zeflon actually shipped." *Ibid.* Zeflon believes that the parties had a shipment contract, in which the risk of loss passed to World Reach after Zeflon tendered the goods to the delivery carrier. *Ibid.*

Zeflon's argument is pretty simple: Zeflon shipped the goods specified in Invoice No. 31286 when it tendered those goods to UPS, FedEx, and Hweisz Trucking; World Reach and its customers accepted those goods; but then World Reach failed to pay for those goods. *Ibid.* As to the fifteen test kits that were shipped to the State of Kansas, Zeflon believes that World Reach didn't timely reject those test kits and, in any event, that Zeflon isn't responsible for any damage to those test kits because the risk of loss shifted to World Reach when Zeflon tendered the tests to the carrier. *Id.* at 15. Finally, to the extent Zeflon had invoiced World Reach for non-delivered goods or inadvertent charges, Zeflon believes that it has properly credited World Reach for those amounts. *Id.* at 16.

World Reach's side of the story isn't so simple. World Reach doesn't dispute that it ordered 471,600 Genbody Tests. *See* Def.'s Resp. at 4. But it insists that it didn't order the additional 21,600 tests that Zeflon says it failed to pay for. *Ibid.* Moreover, World Reach believes that *Zeflon* owes it a credit of $10,780, which was "charged on Invoice No. 31319 that Zeflon mistakenly thought it had forgotten to bill" World Reach for. *Id.* at 5. On top of that, it claims that Zeflon never shipped the 10,800 Genbody Tests (worth $52,920) to Any1Health—tests billed to World Reach on Invoice No. 31256. *Id.* at 8. Lastly, World Reach believes it's entitled to credits of (1) $4,005 for two Indicaid or Genbody Tests World Reach returned to Zeflon and (2) $39,600 for the eight nonconforming cases that were sent to the State of Kansas. *Id.* at 9–10.

Before we analyze these arguments, though, we must address an issue Zeflon raises in its reply. Zeflon says that, "[r]ather than address Zeflon's single claim for breach of contract, for the order

reflected in Invoice 31286, World Reach submits a mathematical morass of irrelevant transactions that are unsupported by admissible evidence." Pl.'s Reply [ECF No. 114] at 3. But Zeflon can't have it both ways. It can't, on the one hand, rely on the parties' course of dealing and then, on the other, selectively disclaim transactions that were made in that course of that dealing. In any event, World Reach's reliance on other invoices amounts to a set-off argument, which (Zeflon concedes) is an affirmative defense under Florida law. *See id.* at 4 (citing *E. Qualcom Corp. v. Glob. Com. Ctr. Ass'n*, 59 So. 3d 347, 352–53 (Fla. 4th DCA 2011)). World Reach's arguments are thus properly before us.

The first issue is whether World Reach ordered the 21,600 Genbody Tests for which Zeflon is seeking $118,800 under Invoice No. 31256. Zeflon's evidence that World Reach ordered those tests is Invoice No. 31256 and the Capland Declaration. *See* Pl.'s SMF ¶ 48 (citing Capland Decl. ¶ 13 ("With respect to the goods under Invoice No. 31256, Zeflon shipped World Reach's entire order of 108 cases of Genbody tests (totaling 97,200 test kits) by FedEx, UPS, or FedEx Freight.")). For its view that it did *not* order those tests, World Reach offers the declaration of Jelena Olmstead, World Reach's Senior Vice President of Sales between July 2020 and January 2023, who insists that World Reach ordered only 471,600 Genbody Tests from Zeflon. *See* Declaration of Jelena Olmstead ("Olmstead Decl.") [ECF No. 103-3] ¶ 12 (including a chart of "eleven orders of Genbody from Zeflon to be delivered to [World Reach's] customers," totaling 471,600 tests).

Zeflon argues that Olmstead's declaration is self-serving. *See* Pl.'s Reply at 4. But self-serving declarations that are based on personal knowledge are perfectly appropriate at summary judgment. *See, e.g.*, *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) ("[O]ur cases correctly explain that a litigant's self-serving statements on personal knowledge or observation can defeat summary judgment."); *Muhammad v. Jones*, 2023 WL 4599969, at *3 (11th Cir. Aug. 25, 2023) (per curiam) ("While an affidavit may not be conclusory, nothing prohibits an affidavit from being self-serving, and a litigant's self-serving statements based on personal knowledge or observation can defeat a summary

judgment motion." (citation omitted)); *Weatherly v. ABC Legal, Inc.*, 2024 WL 2698023, at *8 n.4 (11th Cir. May 24, 2024) (per curiam) ("[O]ur precedent is clear that an affidavit that satisfies Rule 56 and is based on personal knowledge 'may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated.'" (citation omitted)). Besides, if Olmstead's declaration is self-serving, so too is Capland's. The bigger point is that neither party has placed beyond dispute the central issue here: whether World Reach ordered the 21,600 Genbody Tests. There is thus a genuine dispute of material fact on this issue. And, resolving all reasonable inferences against Zeflon—as we must on its motion for summary judgment, *see Am. Bankers*, 408 F.3d at 1331—we find that a reasonable jury *could* conclude that World Reach didn't order those 21,600 Genbody Tests.

The second issue is whether Zeflon owes World Reach an additional $10,780 credit, charged on Invoice No. 31319. World Reach argues that Zeflon didn't credit it $10,780 "on Invoice No. 31319 for [2,200] Genbody Tests that [World Reach] never ordered." *See* Def.'s Resp. at 5. Although Zeflon believes it already applied this credit, its argument is a bit convoluted. In its view, during the parties' pre-litigation reconciliation process, Zeflon discovered that it shipped 495,400 Genbody Tests (including 5,000 to Sphere DX Laboratory) but had only billed World Reach for 493,200 of those tests—a difference of 2,200 units. *See* Pl.'s Reply at 8. But Zeflon then realized that 5,000 of those 495,400 Genbody Tests were shipped on behalf of another customer, Sphere DX—not World Reach. Therefore, World Reach actually ordered 490,400 Genbody Tests, not 493,200 (or 495,400). *Ibid.* Zeflon, in short, determined that World Reach (1) shouldn't pay for the 2,200 units on Invoice No. 31319, and (2) shouldn't pay for an additional 2,800 units that were billed but not shipped (and which, if shipped, would have brought the number to 493,200). *Ibid.* Zeflon subsequently issued a $24,500 credit for 5,000 tests at $4.90 each, as reflected on Invoice No. 31377. *Ibid.*

Here too, there's a genuine dispute of material fact as to whether World Reach is entitled to the $10,780 credit. Zeflon thinks that the credit it offered for the 5,000 tests it sent to Sphere DX

covers the 2,200 tests World Reach never ordered. But viewing the evidence in the light most favorable to World Reach, Invoice No. 31377 accounts for a credit of $24,500 for a *separate* 5,000 tests that Zeflon shipped to Sphere DX—rather than the 2,200 tests World Reach never ordered and which Zeflon mistakenly billed (as reflected in Invoice No. 31319). A reasonable jury could thus conclude that World Reach is entitled to an additional $10,780 credit.

The third issue is whether Zeflon shipped 10,800 Genbody Tests, worth $52,920, to Any1Health. The parties don't dispute that, "on January 12, 2022[,] [World Reach] ordered twelve cases containing a total of 10,800 Genbody Tests from Zeflon to be delivered to Any1Health." Undisputed SMF ¶ 16. As evidence that it *did* ship those tests, Zeflon again points to the Capland Declaration, which says that (1) Zeflon shipped the tests on January 12 and 13, 2022; (2) World Reach paid Invoice No. 31256 on January 18 and 19, 2022; (3) World Reach "produced no communications from its customers reporting a failure of delivery, or otherwise requesting a refund or chargeback;" and (4) World Reach "never complained of any undelivered tests under Invoice 31256 during the parties' extensive reconciliation process." Capland Decl. ¶¶ 14–16. He also declares that the FedEx labels used for the order (which he claims were created by Zeflon) indicate "In Transit," which means that the goods were tendered to FedEx for transit. *Id.* ¶ 19.

World Reach, by contrast, points to the Pesoli Declaration, in which Pesoli declares that "Any1Health requested a refund from [World Reach] in an amount equal to what it had paid [World Reach] for those 10,800 tests due to non-delivery." Pesoli Decl. ¶ 34. Pesoli also notes that Zeflon didn't use the FedEx labels World Reach provided Zeflon for Any1Health's order. *Id.* at 4–6.

Again, resolving all reasonable inferences in favor of World Reach, there's still a dispute of fact about whether these tests were delivered to Any1Health. Maybe Zeflon never used the labels World Reach gave Zeflon for this shipment because it never shipped the tests. It's not even clear that Zeflon used *its own* FedEx labels for a shipment to Any1Health; the "In-Transit" FedEx labels don't

have Zeflon's address on them. *See generally* FedEx Labels [ECF No. 63-5]. And Any1Health allegedly told World Reach that it never received the shipment. *See* Pesoli Decl. at ¶ 34 ("Any1Health requested a refund from [World Reach] in an amount equal to what it had paid [World Reach] for those 10,800 tests due to non-delivery.").[2] But there's certainly evidence that Zeflon did, in fact, ship Any1Health's order. For example, World Reach never said anything to Zeflon about any problems it noticed in Any1Health's shipment—despite multiple opportunities to do so. Zeflon also claims it has documentation that it did ship the order. *See* Capland Decl. ¶ 15 ("Zeflon shipped the goods under Invoice 31256 on January 12 and 13, 2022 and invoiced World Reach on Friday, January 14, 2022[.]"); *see also id.* ¶ 19 ("FedEx labels associated with the order under Invoice 31256 clearly indicate 'In Transit,' a designation made by the carrier once shipment has been effectuated and the goods are in transit to the destination."). And a jury could choose to disbelieve Pesoli's unsupported declaration. The point is we have no business choosing between these two competing stories.

Our fourth issue has to do with the damaged Genbody kits Zeflon delivered to the State of Kansas. World Reach alleges that fifteen cases of Genbody Tests sent to the State of Kansas were damaged. *See* Def.'s SMF ¶ 53 ("Fifteen cases containing 13,500 Genbody Tests that Zeflon had delivered to KHEL had been damaged prior to delivery."). Zeflon argues that, if any damage occurred, it was after the risk of loss passed to World Reach and that, in any event, World Reach didn't timely reject the test kits because it informed Zeflon of the damaged goods more than a month after delivery. *See* Pl.'s MSJ at 15 ("World Reach did not reject the goods within a reasonable amount of time. World

---

[2] Zeflon claims that Pesoli's statement about what Any1Health told World Reach is inadmissible hearsay and thus can't be considered on a motion for summary judgment. *See* Pl.'s Reply at 7–8. But "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999). Because a representative from Any1Health could testify at trial, we can consider Pesoli's statement in evaluating Zeflon's motion for summary judgment—and, of course, Pesoli's statement isn't the only evidence we've considered.

Reach did not inform Zeflon that goods had allegedly been damaged until the end of March 2022, more than a month after Zeflon made the last shipment on the order."). Zeflon also explains that, "[i]n a gesture of goodwill," Zeflon offered World Reach a credit if it would return the fifteen test kits—but (it says) World Reach only returned five. *Ibid.*

World Reach believes that it rightfully revoked acceptance of the fifteen test kits and is thus entitled to a $39,600 credit for the eight other nonconforming cases it didn't return. Specifically, World Reach contends that it would be unreasonable to return the packages because "they were so substantially damaged that the tests contained therein could not be repackaged and returned to Zeflon[.]" Def.'s Resp. at 10. It also argues that it's entitled, at the very least, to a $4,005 credit because Zeflon only credited World Reach with returning five kits. *Id.* at 9. World Reach says that it returned seven kits, two of which may have been Indicaid test kits. *Ibid.* To World Reach, "[e]ven if it was Indicaid Tests that Zeflon received, [World Reach] is entitled a credit in the amount of $4,005 for those two cases of Indicaid Tests." *Ibid.*

In its papers, World Reach doesn't bother analyzing the issue of what type of contract the parties had at all. But, as we'll see, the type of contract the parties had is a critical issue here. "A shipment contract is considered the 'normal' contract in which 'the seller is required to send the subject goods by carrier to the buyer but is not required to guarantee delivery thereof at a particular destination.'" *Scents Corp.*, 2024 WL 2956768, at *3 (quoting *Pestana v. Karinol Corp.*, 367 So. 2d 1096, 1099 (Fla. 3d DCA 1979)). Therefore, a seller under a shipment contract must: "(1) put the goods sold in the possession of a carrier and make a contract for their transportation as may be reasonable having regard for the nature of the goods and other attendant circumstances"; "(2) obtain and promptly deliver or tender in due form any document necessary to enable the buyer to obtain possession of the goods or otherwise required by the agreement or by the usage of the trade"; and finally "(3) promptly notify the buyer of the shipment." *Ibid.* (quoting *Pestana*, 367 So. 2d at 1099). Importantly for our

analysis, "the risk of loss passes to the buyer when the goods sold are duly delivered to the carrier for shipment to the buyer," but not when the "tender or delivery of goods [to the carrier] so fails to conform to the contract as to give a right of rejection[.]" *Ibid.* (first quoting *Pestana*, 367 So. 2d at 1099; and then quoting FLA. STAT. § 672.510(1)).

Applying these principles here, it's clear that World Reach isn't entitled to a $39,600 credit for the eight nonconforming cases of Genbody Tests. The parties had a shipment contract, given that Zeflon was required to send World Reach the goods by carrier, and World Reach has proffered no evidence that the parties departed from the shipment contract default. World Reach doesn't dispute that Zeflon shipped the State of Kansas's Genbody Tests, notified World Reach of the delivery, and provided bills of lading. *Compare* Pl.'s SMF ¶¶ 17–24 *with* Def.'s Resp. to SMF ¶¶ 17–24. World Reach also doesn't dispute that the boxes were damaged after Zeflon tendered the boxes to the carrier. *Compare* Pl.'s SMF ¶ 29 *with* Def.'s Resp. to SMF ¶ 29.[3] In other words, World Reach doesn't dispute that Zeflon complied with the requirements of a shipment contract. *See Lloyd's*, 2024 WL 2956768, at *3 (citation omitted). And because it doesn't dispute that the damage was done after Zeflon tendered delivery to the carriers, it also doesn't dispute that the tender of the goods conformed to the contract. Therefore, the risk of loss shifted to World Reach *before* the Genbody kits were damaged, and Zeflon isn't responsible for that damage. *See ibid.*

---

[3] In its statement of material facts, World Reach does say that the State of Kansas's tests were damaged "prior to delivery." Def.'s SMF ¶ 53. As support, World Reach again cites the declaration of Jim Pesoli. There, he says that the tests were damaged "prior to delivery." Pesoli Decl. ¶ 46. This is insufficient to create a genuine dispute of material fact, for two reasons. *First*, Pesoli doesn't detail how he has personal knowledge of when the goods were damaged, which is central to a risk-of-loss analysis. World Reach's evidence is thus conclusory. *See Rodda v. Univ. of Miami*, 542 F. Supp. 3d 1289, 1295 (S.D. Fla. 2021) (Moreno, J.) ("[A] conclusory affidavit will not defeat summary judgment . . . . Affidavits based upon information and belief, rather than personal knowledge, are also insufficient to withstand a motion for summary judgment."). *Second*, the risk of loss in a shipment contract passes to the seller after the goods have been *tendered* to the carrier, not *after* delivery has been made. *See Lloyd's*, 2024 WL 2956768, at *3 (citation omitted). So, even if Pesoli presented competent evidence, it wouldn't substantively create a genuine dispute of material fact.

World Reach cites case law and statutes on nonconforming goods in making its argument that it is entitled to the $39,600. But "nonconforming goods" is a term of art with no applicability here. The goods at issue were damaged after the risk of loss shifted to World Reach; World Reach doesn't contend that the kits tendered to the carrier were anything other than conforming Genbody kits.

Moreover, even if the kits were considered nonconforming goods, that wouldn't necessarily entitle World Reach to a set-off. Florida law requires the buyer "to follow any reasonable instructions received from the seller with respect to the goods." FLA. STAT. § 672.603(1). Zeflon instructed World Reach to return the goods to Zeflon. World Reach believes that that was an unreasonable request because "the subject eight cases were so substantially damaged that the tests contained therein could not be repackaged and returned to Zeflon." Def.'s Resp. at 10. World Reach says that Zeflon doesn't dispute that the cases were substantially damaged. But Zeflon *specifically* disputes this in response to World Reach's SMF. *See* Pl.'s Resp. to Def.'s SMF [ECF No. 110] ¶ 57. Moreover, World Reach was under a duty to reject the goods in "a reasonable time after their delivery or tender." FLA. STAT. § 672.602(1). Whether World Reach's rejection—more than a month after Zeflon made its last shipment on the order—was timely is up for debate.

That said, there *is* a genuine dispute of material fact as to whether Zeflon owes World Reach a credit of $4,005 for the two Genbody or Indicaid Tests it returned to Zeflon. Zeflon concedes that it offered World Reach a credit for any of the State of Kansas kits World Reach returned. *See* Pl.'s MSJ at 15. Zeflon says that World Reach only returned five Genbody kits and two Indicaid kits. *See ibid.*; Pl.'s Reply at 6. World Reach contends that the two kits Zeflon thinks are Indicaid kits were actually Genbody kits—and that, even if they weren't, World Reach is still owed a credit. Def.'s Resp. at 9. But exactly which type of test kit was returned is material because Zeflon requested that World Reach return the *Genbody* kits. *See* FLA. STAT. § 672.603(1) ("[A] merchant buyer is under a duty after rejection of goods in her or his possession or control to follow any reasonable instructions received from the

seller with respect to the goods."). Each party has its own evidence as to whether or not the two test kits in dispute were Genbody Tests. There is thus a genuine dispute of material fact on this issue.

In sum, we deny summary judgment on Zeflon's breach of contract claim. There are various genuine disputes of material fact as to the set-offs World Reach is entitled to, if any. However, World Reach is not entitled to a set-off of $39,600 for the eight allegedly damaged Genbody kits that were delivered to the State of Kansas.

### b. *World Reach's Affirmative Defenses*

Zeflon next seeks summary judgment on World Reach's affirmative defenses. World Reach's affirmative defenses are (1) statute of frauds; (2) estoppel; (3) Zeflon's prior breach of the contract; (4) failure to mitigate; (5) misrepresentation; (6) set-off; and (7) inability to recover consequential damages as a matter of law. *See* Def.'s Answer [ECF No. 63] at 3–6. As we previewed, we grant summary judgment on the defenses of statute of frauds, estoppel, misrepresentation, set-off, and inability to recover consequential damages.

"On a summary judgment motion based on an affirmative defense, 'the same legal standards and burden-shifting rules [of a motion for summary judgment] are applicable.'" *Baez v. MSC Cruises, S.A.*, 2022 WL 22883192, at *3 (S.D. Fla. June 20, 2022) (Louis, Mag. J.) (citation omitted). "Movants must, however, meet their burden of showing that the nonmoving party cannot maintain these defenses by a preponderance of the evidence." *Ibid.* (citation omitted). Therefore, "merely stating there is no evidence to support the affirmative defenses is not enough to prevail on summary judgment." *Ibid.* (citations omitted). After the movant's burden has been met, the "nonmoving party must submit record evidence in support of the defenses to create a genuine issue of material fact preventing the entry of summary judgment." *Ibid.*

**i. Statute of Frauds, Estoppel, and Inability to Recover Consequential Damages**

In its response, World Reach argues that we "should not enter summary judgment on [World Reach's] affirmative defenses of prior breach, failure to mitigate, misrepresentation, and set-off . . . ." Def.'s Resp. at 11. By failing to respond to Zeflon's arguments with respect to statute of frauds, estoppel, and inability to recover consequential damages, World Reach has waived those affirmative defenses, and we grant summary judgment as to those defenses. *See Transam. Leasing, Inc. v. Inst. of London Underwriters*, 267 F.3d 1303, 1308 n.1 (11th Cir. 2001) (deeming an argument waived after the party "failed to raise this argument in response to [the plaintiff's] motion for summary judgment" (citation omitted)).

**ii. Misrepresentation**

World Reach's affirmative defense of misrepresentation is based on two alleged misrepresentations Zeflon made. *First*, World Reach cites Zeflon's "false statements [associated with Invoice No. 31256] regarding their delivery of certain goods, including" Zeflon's July 15, 2022, email, which stated that World Reach's "order of 97,200 GenBody w[as] delivered and received by KHEL warehouse on 2/3/2022," and attaches a bill of lading as proof. Def.'s Answer at 4–5 ¶ 7; Bill of Lading [ECF No. 63-7] at 1. World Reach alleges that the bill of lading is for another order and that not all 97,200 tests were delivered. *Ibid. Second*, World Reach alleges that Zeflon falsely told World Reach that World Reach "owed a balance of $6,775 [on Invoice No. 31319] for certain goods that World Reach never placed and that Zeflon never delivered." *Id.* at 5 ¶ 9.

Zeflon argues that it's entitled to summary judgment on these affirmative defenses because "allegedly false statements made in July 2022, after the deliveries were completed in January and February of 2022, could not possibly affect [Zeflon's] liability related to those deliveries;" "an allegedly false statement misidentifying one delivery for another" is not fraud; and there was "never any 'knowingly false statement' made with respect to Invoice 31319." Pl.'s MSJ at 18–20.

World Reach's response is only that summary judgment should be denied because "Invoice Nos. 31256 and 31319 themselves misrepresent the number of tests that Zeflon shipped and the amounts [World Reach] should have paid[.]" Def.'s Resp. at 12. But this isn't enough to survive summary judgment. To start, World Reach's misrepresentation claims stem from alleged false statements made after the contracts and course of dealing were established; World Reach doesn't allege that Zeflon fraudulently *induced* it into agreeing to these shipments. World Reach cites no authority for the proposition that false statements made *after* a contract was formed render that contract void (or voidable). But, perhaps more importantly, World Reach makes no attempt to satisfy all the elements of a fraud claim. In Florida, there are four elements of fraud: "(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation was false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation." *Cohen v. Kravit Estate Buyers, Inc.*, 843 So. 2d 989, 991 (Fla. 4th DCA 2003) (citation omitted). World Reach provides no evidence for the latter three elements. We therefore grant summary judgment on the misrepresentation affirmative defense.

### iii. Failure to Mitigate

World Reach next alleges that "Zeflon has failed to mitigate its alleged damages by refusing to apply product credits Zeflon acknowledged were due and ow[ed] to World Reach from prior orders for which World Reach paid in full, but [which] Zeflon has either not delivered or [for which it] delivered damaged, defective, and/or non-conforming goods." Def.'s Answer, at 4 ¶ 5. World Reach believes that Zeflon could have mitigated its damages if it attempted to resell the two cases of test kits World Reach returned to Zeflon (whether those were Genbody or Indicaid). *See* Def.'s Resp. at 12.

Zeflon argues that it "could not mitigate its damages by selling goods to third parties when it had already delivered those goods to" World Reach, Pl.'s MSJ at 18, and that World Reach sent back

Indicaid Tests rather than Genbody Tests "in an attempt to trick Zeflon into issuing World Reach credit for them," Pl.'s Reply at 9.

"There is no actual 'duty to mitigate;'" rather, "[t]he doctrine simply prevents a party from recovering those damages inflicted by a wrongdoer that the injured party *could have* reasonably avoided." *Sys. Components Corp. v. Fla. Dep't of Transp.*, 14 So. 3d 967, 982 (Fla. 2009) (citation omitted). "[T]he injured party is only accountable for those hypothetical ameliorative actions that could have been accomplished through 'ordinary and reasonable care,' without requiring undue effort or expense." *Ibid.* (citation omitted).

We decline to grant summary judgment on this "affirmative defense." There are still genuine disputes of material fact for the jury to decide. For example, did World Reach return Genbody or Indicaid Tests to Zeflon? If they were Genbody Tests, what condition were they in after the risk of loss had shifted to World Reach? Regardless of what tests they were, what would reasonable efforts to mitigate look like? If they were Indicaid Tests, would it be reasonable for Zeflon to try and resell those? The jury can answer these (and other) questions for us.

### iv. Set-Off

Next, World Reach contends that it is entitled to a "set-off" "in the amounts due and owing [sic] from Zeflon to World Reach for Zeflon [sic] undelivered or defective deliveries, for which World Reach paid in full and which Zeflon repeatedly represented would be credited to World Reach against future orders." Def.'s Answer at 5 ¶ 10. As we discussed above, *supra* § I(a), World Reach is not entitled to a set-off for the allegedly damaged State of Kansas test kits. We decline, however, to grant summary judgment on World Reach's affirmative defense of set-off as to those issues where genuine disputes of material fact remain.

But World Reach also says that it "is entitled to a set-off for any amount that is payable to Zeflon through any other source, including, but not limited to, any insurance available to Zeflon."

Def.'s Answer at 5 ¶ 11. In its motion, Zeflon argues that World Reach "cites no statute or rule that would permit such a setoff in a breach of contract action. None exists and this defense fails." Pl.'s MSJ at 20. World Reach neither responds to this argument nor proffers facts showing such insurance exists. *See* Def.'s Resp. at 12. This affirmative defense has thus been abandoned and is dismissed. *See Transam. Leasing, Inc.*, 267 F.3d at 1308 n.1 (citation omitted). Moreover, in Florida, the collateral source rule applies to breach of contract actions and "prohibits both the introduction of evidence of collateral insurance benefits received and the setoff of any collateral source benefits from the damage[s] award." *F.D.I.C. v. First Am. Title Ins. Co.*, 611 F. App'x 522, 534 (11th Cir. 2015) (cleaned up). Therefore, World Reach wouldn't be entitled to a set-off from insurance benefits or any other collateral source.

### v. Prior Breach

Finally, World Reach alleges that Zeflon itself breached the parties' contract when it "did not, in fact, ship *at least* $52,920 worth of product that [World Reach] paid for and has not been provided a refund." Def.'s Resp. at 11 (citing Def.'s Answer at 3 ¶ 3). Zeflon argues that it did ship all the goods at issue. As we've explained, there's a genuine dispute of material fact on this issue. We therefore deny summary judgment on the affirmative defense of prior breach.

*     *     *

To summarize, we grant summary judgment as to all of World Reach's affirmative defenses except set-off (for all shipments except for the eight damaged State of Kansas Genbody kits), mitigation, and prior breach.

### c.   *World Reach's Counterclaims*

Zeflon also seeks summary judgment on World Reach's counterclaims of breach of contract (Counts I and II), declaratory judgment (Count III), unjust enrichment (Count IV), and promissory

estoppel (Count V). We deny summary judgment on Counts I, II, and V, but grant summary judgment on Counts III and IV.

### i.   Counts I–II (Breach of Contract)

Count I alleges that Zeflon failed to deliver eight of the sixty Indicaid Test cases and thirty-four of the 108 Genbody Tests that World Reach alleges it paid for under Invoice No. 31256, totaling $161,955. Def.'s Answer at 11–12 ¶ 45. Count II alleges that Zeflon failed to deliver 2,800 Genbody Tests under Invoice No. 31286 and "failed to perform its obligations under Invoice No. 31286 by delivering 15 cases of defective, damaged, or otherwise non-conforming Genbody Tests (representing 13,500 tests) that the State of Kansas rejected." *Id.* at 12 ¶ 48.

As we discussed, *supra* § I(a), there's a genuine dispute of material fact as to whether all the goods ordered by World Reach under Invoice Nos. 31256 and 31286 were delivered by Zeflon. We therefore deny summary judgment on Counts I and II of World Reach's counterclaims to the extent they're based on non-delivery. At the same time, we grant summary judgment on Count II to the extent it relies on the allegation that Zeflon sent nonconforming goods to the State of Kansas, for the reasons we set forth above.

For Counts I and II, World Reach seeks lost profits and damages for loss of goodwill. Def.'s Answer at 12–13. Zeflon contends that World Reach isn't entitled to those damages because "it is not foreseeable that a contracting partner would lose any profits or goodwill from goods that are accepted" and because "World Reach cannot establish that reputational damages were in contemplation of both parties at the time they made the contract." Pl.'s MSJ at 22. In World Reach's view, Zeflon's arguments "presuppose[ ] that Zeflon did, in fact, ship all of the goods it was required to have" and that "it is clearly foreseeable that [World Reach] would lose profits on goods ordered but not delivered." Def.'s Resp. at 13.

We deny summary judgment on the issue of lost profits. Lost profits are recoverable for a breach of contract under Florida law, as long as the party "actually sustained a loss as a proximate result of that breach, that the loss was or should have been within the reasonable contemplation of the parties, and that the loss alleged was not remote, contingent, or conjectural and the damages were reasonably certain." *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1242 (11th Cir. 2009) (citation omitted). World Reach should have the opportunity to prove such damages at trial.

The same goes for reputational damages. "[D]amages for breach of contract must arise naturally from the breach, or have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach." *K3 Enters., Inc. v. Sasowski*, 2022 WL 17987272 at *2 (S.D. Fla. Sept. 8, 2022) (Cannon, J.) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1532 n.11 (11th Cir. 1985)). There is thus no "categorical bar to reputational damages in breach of contract actions;" rather, such damages are recoverable if they "arise naturally" or "flow[ ]" from a breach of contract. *Ibid.* (citations omitted). World Reach should have the opportunity to prove these damages at trial as well.

### ii.  Count III (Declaratory Judgment)

Count III seeks a declaratory judgment that World Reach "does not owe Zeflon any funds under Invoice No. 31319" because it "did not place the order for [the] 2,2[0]0 Genbody Tests" at issue in that Invoice. Def.'s Answer at 13. Zeflon seeks summary judgment on this claim because "[i]t is subsumed into the damages analysis of the parties' contractual claims." Pl.'s MSJ at 23. World Reach doesn't believe Count III is subsumed into the other claims because World Reach "does not sue for breach arising from Invoice No. 31319." Def.'s Resp. at 13.

As we explained, however, Invoice No. 31319 is at issue with respect to Zeflon's breach of contract claims. World Reach disputes the charges on Invoice No. 31319, arguing that Zeflon owes World Reach "$10,780 on Invoice No. 31319 for Genbody Tests that [World Reach] never ordered."

Def.'s Resp. at 13. "[A] declaratory judgment claim must look forward, not backward, as any retrospective declaratory judgment would be equally solved by resolution of the breach of contract claim." *Wendt v. FEMA*, 2021 WL 11729040, at *2 (S.D. Fla. Aug. 25, 2021) (McAliley, Mag. J.). Because World Reach's declaratory judgment will be "solved by resolution" of the parties' breach of contract claims, *ibid.*, we grant Zeflon's motion for summary judgment on Count III.

### iii. Count IV (Unjust Enrichment)

Count IV is for unjust enrichment and alleges that "[b]ecause Zeflon has not fulfilled World Reach's orders, it would be inequitable to allow Zeflon to retain the benefits without first paying the value thereof to World Reach." Def.'s Answer at 14 ¶ 59. Zeflon argues that the unjust enrichment claim should be dismissed because World Reach has admitted to the existence of a contract between the parties. Pl.'s MSJ at 24–25. World Reach pushes back, arguing that it doesn't concede the existence of a contract, that an unjust enrichment claim can be pled in the alternative, and that "Zeflon was potentially unjustly enriched by the receipt of two cases of Indicaid Tests that it claims to have received from WRH." Def.'s Resp. at 13–14.

As Zeflon correctly points out, *see* Pl.'s Reply at 11, nowhere in World Reach's counterclaims does it allege that Zeflon unjustly enriched itself *by receiving the Indicaid Tests*. That's a brand-new theory of liability, raised opportunistically for the first time in World Reach's response brief. But, "as the Eleventh Circuit has (repeatedly) said, '[a] plaintiff may not amend [its] complaint through argument in a brief opposing summary judgment.'" *A&E Adventures LLC v. Intercard, Inc.*, 529 F. Supp. 3d 1333, 1355 (S.D. Fla. 2021) (Altman, J.) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). We therefore grant summary judgment on the unjust-enrichment claim insofar as it's based on enrichment through the Indicaid Tests.

World Reach's broader unjust-enrichment claim meets the same fate. World Reach says it pled this claim "in the alternative to its breach of contract claim[s]"—in the event that "Zeflon refute[d]

the existence of the contract [World Reach] pleads in its counterclaims." Def.'s Resp. at 13. "[A] plaintiff may plead an unjust enrichment claim in the alternative to a breach-of-contract claim where one or more of the parties contest[s] the existence of an express contract governing the subject of the dispute." *Frayman v. Douglas Elliman Realty, LLC.*, 515 F. Supp. 3d 1262, 1287–88 (S.D. Fla. 2021) (Altonaga, J.) (cleaned up). Of course, we denied summary judgment on World Reach's breach-of-contract claims (Counts I and II)—and, by the same token, on Zeflon's breach-of-contract claim—because *neither* side has "refute[d] the *existence* of the contract" World Reach pled. Although World Reach doesn't "concede that a contract was established by the parties' course of dealings," Def.'s Resp. at 13, it's done absolutely nothing to show that no contract was formed, *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived.")—and so, it fails to carry its burden to "come forward with specific facts showing there is a genuine issue for trial" on this claim, *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (cleaned up). We therefore grant summary judgment on World Reach's unjust-enrichment claim.

### iv.  Count V (Promissory Estoppel)

Finally, Count V is for promissory estoppel. World Reach alleges that "Zeflon promised that amounts due and owing [sic] to World Reach based on previously unfilled orders, or shipments of defective, damaged, and/or non-conforming goods would be credited towards future orders" and Zeflon broke this promise. *Id.* at 14–15 ¶¶ 61–64. Zeflon believes that this claim is "fatally vague" and that it has already credited World Reach everything that World Reach is owed. Pl.'s MSJ at 24. In its response, World Reach clarifies that its promissory estoppel claim is based on the allegation that Zeflon only credited World Reach with sending back five Genbody cases from the State of Kansas, when actually World Reach should have been credited with seven.

A promissory estoppel claim has three elements: "(1) a representation as to a material fact that is contrary to a later-asserted position; (2) a reasonable reliance on that representation; and (3) a

change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon." *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 650 (Fla. 3d DCA 2006) (quoting *FCCI Ins. Co. v. Cayce's Excavation, Inc.*, 901 So. 2d 248, 251 (Fla. 2d DCA 2005)). As discussed above, *supra* § I(a), there is a genuine dispute of material fact as to whether World Reach sent back five Genbody and two Indicaid boxes, or seven Genbody boxes. We therefore deny summary judgment on the promissory-estoppel claim.

*     *     *

To recap, we deny summary judgment on Counts I, II, and V of World Reach's counterclaims, but we grant summary judgment on Counts III and IV.

## II.    World Reach's Motion for Summary Judgment

World Reach, for its part, seeks summary judgment because it believes that this Court lacks subject-matter jurisdiction. Specifically, it argues that although Zeflon seeks $260,655 in damages, "[i]rrefutable evidence establishes there is no disputed material fact that the amount in controversy is less than $75,000.00." Def.'s MSJ at 10. On the facts, World Reach's motion is the inverse of Zeflon's— it wants us to find it undisputed that it *doesn't* owe money for the $118,800 in Genbody Tests, that it *doesn't* owe $10,780 for the tests on Invoice No. 31319, and so on. On the law, it asks for both summary judgment on the facts and for us to dismiss the Complaint.

World Reach styles its motion as one for summary judgment, but because the motion actually mounts a factual attack on our diversity jurisdiction over this case, we'll resolve it under Rule 12(b)(1). *See Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1023 (11th Cir. 2021) ("Although the district court in this case heard and granted a motion for summary judgment, the motion presented a 'factual attack' on subject-matter jurisdiction. . . . If a valid attack, dismissal would be appropriate pursuant to Federal Rule of Civil Procedure 12(b)(1), instead of the entry of judgment pursuant to Rule 56(a)."). "In general, courts have ruled that summary judgment is an inappropriate vehicle for raising a question

concerning the court's subject-matter jurisdiction." 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2713 (4th ed. 2024). "The rationale for this conclusion, although somewhat metaphysical, is sound. If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action." *Ibid.*; *accord Hakki*, 7 F.4th at 1023 ("Though proceeding like it would in hearing a motion for summary judgment when presented with a valid factual attack, the district court must construe [ ] a motion for summary judgment as a factual attack on subject matter jurisdiction under Rule 12(b)(1) because it is without power to enter judgment without jurisdiction and must dismiss the case." (cleaned up)).

Here, though, the difference in standards is mostly cosmetic—in fact, resolving World Reach's motion under Rule 12(b)(1) is more favorable to it than resolving the motion under Rule 56. But for the reasons set forth in section I, all the material facts in this case are disputed, so World Reach's motion fails no matter how we analyze it.

    *a.  The Rule 12(b)(1) Standard*

A Rule 12(b)(1) motion can launch *either* a "facial attack" *or* a "factual attack" on subject-matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.2d at 1529). Because the allegations are taken as true, the non-movant "is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." *Ibid.*; *see also Banco Santander Int'l v. Polegre*, 2011 WL 13224896, at *1 (S.D. Fla. Nov. 28, 2011) (Ungaro, J.) (same); *RT-destin Assocs. LLC v. Nexpoint Real Est. Advisors LP*, 2020 WL 6505014, at *1 (N.D. Fla. Nov. 5, 2020) (Rodgers, J.) ("A Rule 12(b)(1) facial attack is based on the allegations

of the complaint, which are taken as true and reviewed for plausibility, as with a Rule 12(b)(6) motion." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

In contrast, a "factual attack" "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Cave v. Stone*, 2021 WL 4427451, at *1 (S.D. Fla. Sept. 27, 2021) (Altman, J.) (quoting *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008)). "If a defendant makes a factual attack based on evidence outside of the pleadings, the plaintiff must also 'submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject-matter jurisdiction.'" *Landmark Equity Fund II, LLC v. Residential Fund 76, LLC*, 2014 WL 1652049, at *7 (S.D. Fla. Apr. 23, 2014) (Hunt, Mag. J.) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)), *aff'd*, 631 F. App'x 882 (11th Cir. 2015).[4] "A district court evaluating a factual

---

[4] *Paterson* binds us. It was decided on May 8, 1981, and "[a]ll decisions of the former Fifth Circuit announced before October 1, 1981, are binding precedent in the Eleventh Circuit." *Roman v. United States*, 789 F. App'x 211, 212 (11th Cir. 2019) (citing *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)). The Eleventh Circuit, for its part, has repeatedly affirmed that a plaintiff resisting a factual attack bears the burden of showing that jurisdiction exists. *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 844 (11th Cir. 2013); *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) ("In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists."). And, in resolving appeals of factual attacks on diversity jurisdiction (specifically on the citizenship requirement), the Eleventh Circuit has measured that burden against the preponderance standard. *Simpson v. Fender*, 445 F. App'x 268, 270 (11th Cir. 2011) ("In the present case, [the plaintiff] bore the burden of showing by a preponderance of the evidence that at the time he filed his lawsuit he was not domiciled in Georgia."); *McCormick v. Aderholt*, 293 F.3d 1254, 1258 (11th Cir. 2002) (holding, on factual challenge to plaintiff's citizenship, that the plaintiff "bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction"). Although the Circuit hasn't *spelled out* that, on a factual attack, the plaintiff must carry its burden by a preponderance of the evidence, other courts in our circuit have done so—correctly, we think. *E.g.*, *Watson v. Lemongrass Rpp LLC*, 2023 WL 5266999, at *1 (S.D. Fla. Aug. 16, 2023) (Williams, J.) ("'In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists' by a preponderance of the evidence." (quoting *OSI*, 285 F.3d at 951)); *Active Acquisitions, LLC v. B+S Card Servs. GMBH*, 2013 WL 12167540, at *1 (M.D. Fla. May 10, 2013) (Merryday, J.) (same holding, citing *Paterson*, 644 F.2d at 523); *Faison v. Duncan*, 2012 WL 5076059, at *2 (N.D. Ga. Oct. 16, 2012) ("In the event of a factual challenge to subject matter jurisdiction, the plaintiff bears the burden of proving the court's ability to hear the case by a preponderance of the evidence." (citing *OSI*, 285 F.3d at 951)); *Harris v. Bd. of Trs. Univ. of Ala.*, 846

attack on subject matter jurisdiction" *generally* "'may proceed as it never could' at summary judgment and 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Hakki*, 7 F.4th at 1023. It's "not limited to an inquiry into undisputed facts," *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991), and "'not constrained to view [disputed] [facts] in the light most favorable' to the plaintiff," *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336 (11th Cir. 2013) (quoting *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009)). *See also Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) ("When a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1), the district court is free to independently weigh facts[.]"). As other courts in our District have observed, we "seem[ ] to enjoy greater discretion on a factual attack to subject-matter jurisdiction" when we proceed under Rule 12(b)(1). *City of Pembroke Pines v. Fed. Emerg. Mgmt. Agency*, 2021 WL 48950 (S.D. Fla. Jan. 4, 2021) (Singhal, J.).

But there's an exception: When the facts necessary to sustain jurisdiction implicate or are intertwined with an element of the challenged cause of action, the court must analyze those facts under the more restrictive Rule 12(b)(6) or Rule 56 standards. *See Morrison v. Amway Corp.*, 323 F.3d 920, 925–27 (11th Cir. 2003) (holding that, because the defendant's motion for summary judgment on subject-matter jurisdiction attacked the "eligible employee" element of the plaintiff's FMLA claim, "the district court should have treated the motion as a motion for summary judgment under Rule 56"); *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261, 1266 (11th Cir. 1997) (same, where defendant's Rule 12(b)(1) motion attacked the "eligible employer" element of the plaintiff's ADEA claim). So, when jurisdictional facts implicate the elements of the underlying claim, we must

---

F. Supp. 2d 1223, 1232 (N.D. Ala. 2012) (same holding, quoting *Paterson*, 644 F.2d at 523); *Rosenkrantz v. Markopoulos*, 254 F. Supp. 2d 1250, 1252 (M.D. Fla. 2003) (Moody, J.) ("When standing is challenged on a factual basis, the plaintiff must demonstrate that standing exists by a preponderance of the evidence.").

"refrain[ ] from deciding disputed factual issues." *Morrison*, 323 F.3d at 925; *see also Garcia*, 104 F.3d at 1261 ("[T]he proper ruling is to deny [the defendant's] motion to dismiss for lack of subject matter jurisdiction and allow the jury to decide if [the plaintiff] is an 'employee' and if [the defendant] is an 'employer.'"). Rather, the "proper course of action . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Morrison*, 323 F.3d at 925 (quoting *Garcia*, 104 F.3d at 1261).

That said, Zeflon's burden isn't heavy, irrespective of whether World Reach's factual attack on the amount in controversy is intertwined with an element of this action. When a plaintiff claims in good faith a particular sum over $75,000, it "satisfies the amount in controversy requirement." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). Zeflon seeks $260,655 in damages. "[W]here—as here— a plaintiff pleads a specific amount of damages, a defendant may obtain dismissal only if it appears 'to a *legal certainty* that the claim is really for less than the jurisdictional amount.'" *Tymar Distrib. LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275, 1282 (S.D. Fla. 2021) (Altonaga, J.) (quoting *Red Cab Co.*, 303 U.S. at 289 (emphasis added)); *accord Federated Mut. Ins. Co.*, 329 F.3d at 807.[5] To put that in terms of a plaintiff's Rule 12(b)(1) obligations, "the plaintiff bears the initial burden of showing"— by a preponderance of the evidence—"that it does not appear to a legal certainty that [its] *claim* is for

---

[5] When a plaintiff claims "indeterminate damages" rather than a specific sum—for example, when the plaintiff seeks declaratory or injunctive relief—"the legal certainty test gives way" and the plaintiff must instead show by a preponderance of the evidence that the claimed damages *exceed* the amount-in-controversy threshold. *McKinnon Motors*, 329 F.3d at 807; *see also Canopius U.S. Ins. Inc. v. Prestige Gen. Cleaning Servs. Inc.*, 2014 WL 6979658, at *2 (S.D. Fla. Dec. 9, 2014) (Bloom, J.) ("[T]his burden . . . merely requires that Plaintiff convince [the] Court that it is more likely than not that the pleading satisfies the jurisdictional minimum." (quoting *Co. Prop. & Cas. Ins. Co. v. Metal Roofing Sys.*, 2013 WL 5770730, at *3 (S.D. Fla. Oct. 24, 2013) (Rosenbaum, J.))). Theoretically, that's a heavier burden than merely showing by a preponderance of the evidence that it's not certain that the amount *falls below* the threshold. But, even then, "th[e] burden is not onerous." *Canopius U.S. Ins.*, 2014 WL 6979658, at *2 (quoting *Metal Roofing Sys.*, 2013 WL 5770730, at *3).

less than the statutory jurisdictional amount." 14B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3704 (5th ed. 2024) (emphasis added); *see also id.* § 3702; *Burlington Ins. Co., Inc. v. Brown*, 2013 WL 3470724, at *2 (M.D. Fla. July 10, 2013) (Conway, J.) ("Generally, the Court accepts that the amount in controversy has been satisfied when the plaintiff claims a sufficient sum in good faith, *absent facts demonstrating to a legal certainty that the claim is really for less than the jurisdictional amount.*" (emphasis added)). That is, the plaintiff "must demonstrate" merely "that there is a *possibility* of recovering more than the jurisdictional minimum, and must [demonstrate that possibility] by a preponderance of the evidence." 15A JAMES MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 102.106 (2025). In resolving a Rule 12(b)(1) factual attack, we're concerned only with "the amount the plaintiff has *placed in controversy*, not the amount the plaintiff is *likely to recover.*" *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 730 (11th Cir. 2014) (emphasis added). The amount in controversy is, after all, a threshold requirement; "[a] party seeking to invoke our jurisdiction" has to demonstrate that there is in fact a controversy over an amount greater than $75,000, but it "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Alvarez v. Loancare LLC*, 2021 WL 184547, at *6 (S.D. Fla. Jan. 19, 2021) (Altonaga, J.) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)).

Bearing in mind the law we just explained, we'll analyze World Reach's attack on the amount-in-controversy requirement as follows. *First*, we'll determine whether the attack is factual or facial. If the attack is factual, we'll determine whether it implicates an element of the challenged cause of action—and if it does, we won't resolve any disputed factual issues. *Finally*, because Zeflon has placed a specific amount in controversy, we'll decide whether Zeflon has shown by a preponderance of the evidence that it's not legally impossible for it to recover that amount.

    b. *World Reach's Rule 12(b)(1) Factual Challenge Fails*

   Our analysis will be brief: World Reach doesn't even come close to showing that we don't have subject-matter jurisdiction over this action. *First*, we determine (with no difficulty) that World Reach's attack is factual rather than facial. Relying on the extensive—and muddled—factual record developed over the course of discovery and summary-judgment briefing, World Reach argues that Zeflon's damages undisputedly fall short of the $75,000 threshold for our diversity jurisdiction. World Reach's attack on our subject-matter jurisdiction is "factual in nature because it challenges the existence of subject matter jurisdiction in fact," *Ritter v. Short Hills Aviation Servs., Inc.*, 2020 WL 13567933, at *2 (S.D. Fla. Apr. 14, 2020) (Singhal, J.), using summary-judgment materials "extrinsic" from the pleadings, *see Stalley*, 524 F.3d at 1233.[6] Next, we determine that World Reach's attack doesn't implicate any element of Zeflon's breach-of-contract claim. If World Reach denied that Zeflon had been damaged at all, *that* would implicate the damages element of Zeflon's claim. But it doesn't. Rather, World Reach contends that "the amount in controversy is $74,150.00 *at most*." Def.'s MSJ at 10. World

---

[6] Some courts in our circuit have said that "[a] challenge to the amount in controversy pleaded in the complaint is generally treated as a *facial* attack to subject-matter jurisdiction." *E.g.*, *Emps. Mut. Cas. Co. v. Huff*, 2017 WL 3613043, at *3 (N.D. Ala. Aug. 22, 2017) (emphasis added); *Wiggins v. Allstate Prop. and Cas. Ins. Co.*, 2014 WL 11944279, at *1 (S.D. Fla. Apr. 28, 2014) (Williams, J.) (same); *Lady of Am. Franchise Corp. v. Cunningham*, 2008 WL 11333325, at *2 (S.D. Fla. Nov. 26, 2008) (Cohn, J.) (finding that dispute over the amount in controversy amounted to a facial attack because the court was not required "to weigh an element of Plaintiff's cause of action"). To the extent these courts are saying that we should generally treat challenges to the amount in controversy as facial attacks, we don't think that makes sense. *How* the defendant attacks our subject-matter jurisdiction—not *what* it attacks—is what determines whether the attack is facial or factual. Of course, it's true that the amount in controversy can be facially attacked. A specific rule of law that'd limit or reduce the damages claimed by the plaintiff, for example, could be raised without any extrinsic evidence. *E.g.*, *McKinnon*, 329 F.3d at 808 n.4 (refusing to count attorneys' fees toward the amount in controversy because they weren't "allowed for by statute or contract"). But we see no reason the amount in controversy couldn't also be factually attacked—much as it was here. *Cunningham* suggests—without citation—that we should treat an amount-in-controversy challenge as facial so long as it doesn't implicate an element of the plaintiff's claim. But in *Cunningham*, the court wasn't asked to evaluate extrinsic evidence: it was asked only to evaluate whether the mechanical operation of a contract gave rise to a certain amount of damages. Treating that attack as facial rather than factual was perfectly appropriate; applying *Cunningham*'s unsupported suggestion to the fact-heavy challenge before us wouldn't be.

Reach is saying, in so many words, that there *could* be damages—just not enough to satisfy the jurisdictional threshold. In resolving World Reach's factual challenge, then, we won't give Zeflon the benefit of Rule 56.

So, does Zeflon show by a preponderance of the evidence that it's not legally impossible for it to recover the $260,655 it seeks? Yes—obviously. As we explained at length, *supra* § I, practically all the material facts in this action are disputed. They're so disputed, in fact, that even when we resolved all reasonable inferences *against Zeflon*, we couldn't conclude that World Reach didn't still potentially owe Zeflon over $75,000. Under *that* standard, whether we apply Rule 12(b)(1) or Rule 56 to World Reach's Motion is immaterial. Indeed, under Rule 56, we would have resolved all reasonable inferences *against World Reach*, and its Motion would have failed by that much more.

World Reach's so-called Motion for Summary Judgment is therefore denied. World Reach isn't entitled to summary judgment on any issue, and we reject its challenge to our subject-matter jurisdiction.

\*       \*       \*

After careful review—we hereby **ORDER** and **ADJUDGE** as follows:

1.  World Reach's Motion for Summary Judgment [ECF No. 102] is **DENIED.**

2.  Zeflon's Motion for Summary Judgment [ECF No. 104] is **GRANTED IN PART** and **DENIED IN PART**.

3.  The Clerk of Court shall **REOPEN** this case.

4.  The parties shall submit a proposed scheduling order within **FOURTEEN DAYS** of the entry of this Order.

**DONE AND ORDERED** in the Southern District of Florida on April 1, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record